UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAMOS ALFONSO CEBALLOS,

      Petitioner,

v.                                                    Case No.: 2:26-cv-00658-SPC-NPM

DAVID HARDIN *et al.*,

      Respondents,

_____/

## **OPINION AND ORDER**

Before the Court is Ramos Alfonso Ceballos's Petition for a Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 9), and Ceballo's reply (Doc. 11).

Ceballos is a Venezuelan national who lawfully entered the United States on a B-2 visa on June 18, 2000. He applied for asylum, but an immigration judge denied the application and granted voluntary departure. After an unsuccessful appeal, the voluntary removal period automatically terminated, and the removal order became final in 2009. Sometime in 2008 or 2011 (the parties disagree), Immigration and Customs Enforcement ("ICE") released Ceballos under an order of supervision. On February 27, 2026, Ceballos appeared at ICE's Miramar office for a check-in required by the order of supervision. ICE arrested Ceballos and detained him at Glades County

Detention Center.  Ceballos filed a petition for a writ of habeas corpus ten days later.

Ceballos asserts his detention violates the Immigration and Nationality Act and its implementing regulations, the Due Process Clause of the Fifth Amendment, and the Administrative Procedures Act.  The government counters that Ceballos is properly detained under 8 U.S.C. § 1231(a).  This action largely hinges on whether Ceballos currently has temporary protected status ("TPS"), so the Court starts there.

**A. TPS**

On March 9, 2021, the Department of Homeland Security ("DHS") designated Venezuela for TPS.  *See Designation of Venezuela for Temporary Protected Status*, 68 FR 13574-01, at *13576 (Mar. 9, 2021).  Ceballos applied for TPS under the 2021 designation, and he received it in 2022.  Since then, he has consistently renewed his TPS registration.  He submitted his most recent application on April 7, 2025.  Venezuela's 2021 TPS designation was set to expire on September 10, 2025.  But on September 8, 2025, DHS extended the designation 60 days and announced its termination, effective November 7, 2025.  90 FR 43225-02 (Sept. 8, 2025).

DHS designated Venezuela for TPS again on October 3, 2023, to allow another round of emigres to apply for protection.  On January 17, 2025, DHS extended the 2023 designation through October 2, 2026, and consolidated the

2021 and 2023 designations, meaning 2021 TPS holders could maintain their status through October 2, 2026.  On February 5, 2025, DHS terminated the 2023 designation and the 2025 extension.  *Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 9040-01 (Feb. 5, 2025).  That termination and vacatur was set aside in *Nat. TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), because the court found it violated the Administrative Procedures Act.

On October 3, 2025, the Supreme Court stayed the district court's order pending the government's appeal to the Ninth Circuit "and disposition of a petition for a writ of certiorari, if such writ is timely sought."  *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025).  The Ninth Circuit affirmed the district court's decision on January 28, 2026.  *Nat'l TPS All. v. Noem*, 166 F.4th 739 (2026).  The government's time to seek certiorari has not yet elapsed.  On December 10, 2025, the district court entered declaratory judgment, declaring unlawful the February 5, 2025 termination and vacatur.

The parties dispute whether Ceballos currently has TPS.  Ceballos re-registered for TPS on April 7, 2025, but U.S. Citizenship and Immigration Services ("USCIS") has not approved it.  Thus, the dispute comes down to whether Ceballos's TPS was automatically extended when he re-registered. The notice announcing the January 17, 2025 extension suggests it was not.  *See Extension of the 2023 Designation of Venezuela for Temporary Protected Status*,

90 FR 5961-01 (Jan. 17, 2025) ("*If USCIS approves an individual's Form I-821*, USCIS will grant the individual TPS through October 2, 2026.") (emphasis added).  The only source Ceballos cites to support automatic extension is USCIS's website, but it does not help him.  In fact, the page linked in his reply—https://www.uscis.gov/humanitarian/temporary-protected-status—includes a run-down of the application and re-registration process, which includes adjudication by the USCIS.  Based on the evidence and argument presented, the Court finds that Ceballos does not currently have TPS because USCIS did not approve his April 7, 2025 re-registration.

### B. Substantive Due Process

 Ceballos claims his detention violates his substantive due process rights because there is no significant likelihood of removal in the reasonably foreseeable future.

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. 683, 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  *Id* at 701.  So, "for the sake of uniform administration in the federal courts," it established a

"presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Ceballos's petition is premature because his current detention has not exceeded 180 days. They assume the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Ceballos does not meet his burden. His primary reason he argues the government cannot remove

him is his purported TPS, but as explained above, Ceballos does not currently have that status. What is more, Ceballos convinced the Court his removal appeared imminent in his motion for preliminary injunctive relief. The Court finds no good reason to believe ICE cannot remove Ceballos in the reasonably foreseeable future, so his detention does not violate his substantive due process rights.

### C. Procedural Due Process, APA, and *Accardi*

Ceballos's remaining claims challenge three aspects of the procedure ICE used to revoke his release and re-detain him. First, he alleges ICE detained him without providing notice and an opportunity to be heard. But the evidence shows ICE served him with a written notice of revocation of release on February 27, 2026. It indicates ICE revoked his release under 8 C.F.R. § 241.4(l) and § 241.13(i) because ICE found it appropriate to execute the removal order and determined there is now a significant likelihood of removal in the reasonably foreseeable future. It also stated ICE was seeking travel documents to effect Ceballos's expeditious removal to Venezuela. Thus, ICE provided Ceballos adequate notice of the reason for his detention. The regulations required ICE to give Ceballos a chance to respond in an informal interview. The interview was held on February 27, 2026, so Ceballos had an opportunity to be heard. ICE provided Ceballos the basic elements of procedural due process.

Second, Ceballos alleges the ICE officer who revoked release, Acting Supervisory Detention and Deportation Officer Jivonshay Gamble, did not have authority to do so under § 241.4(l)(2).  And indeed, that provision gives revocation authority to two specific officials—the Executive Associate Commissioner and the district director.  The respondents do not claim Gamble had authority to revoke under § 241.4(l)(2).  But § 241.13(i) includes no similar limitation, and Ceballos provides no reason for the Court to find that Gamble lacked authority to revoke release under that section.

And third, Ceballos claims ICE did not make the findings required by the laws and regulations governing revocation.  § 241.13(i) allows ICE to revoke release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  Gamble purportedly made that determination, and it appears he was correct.  Removal appeared so imminent that the Court entered a temporary restraining order to prevent it while considering the merits of Ceballos's claims.

The Court finds that ICE satisfied the procedural requirements of the Fifth Amendment and the applicable regulations.

### D. Conclusion

Based on the foregoing analysis, the Court finds that respondents are lawfully detaining Ceballos under 8 U.S.C. § 1231(a).  The Court will thus deny

his habeas petition. That said, if ICE does not promptly remove Ceballos, and he can show a good reason to believe ICE will not remove him in the reasonably foreseeable future, he may file a new petition under *Zadvydas*

Accordingly, it is hereby

**ORDERED:**

1. Ramos Alfonso Ceballos's Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The Clerk is **directed** terminate any pending motions and deadlines as moot, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on April 3, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1